**Jose R. ALVAREZ, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 54149.**

Court of Criminal Appeals of Texas, Panel No. 3.

May 31, 1978.

Victor A. Speert, San Antonio, court appointed on appeal, for appellant.

Ted Butler, Dist. Atty., Keith W. Burris, Donald A. Clowe and H. Wayne Campbell, Asst. Dist. Attys., San Antonio, for the State.

Before ROBERTS, PHILLIPS and VOLLERS, JJ.

## OPINION

ROBERTS, Judge.

This is an appeal from a conviction, enhanced by one prior felony conviction, for aggravated assault with a deadly weapon.[1]

After a jury found the appellant guilty, the appellant pleaded true to the enhancement paragraph and the trial judge assessed the appellant's punishment at eighteen years' confinement in the Texas Department of Corrections.

The appellant contends, among other things, that the evidence was insufficient. We reverse.

The trial testimony reveals that at approximately 2:00 a. m., on May 15, 1975, Officer Jack Weaver of the San Antonio Police Department was patrolling in a marked police car in the 1400 block of Castroville. When Weaver drove by Chino's Dugout at 1410 Castroville, he saw a couple of men taking tire tools out of the trunk of a car. Weaver circled back around to a service station across the street from Chino's Dugout and parked there. Immediately thereafter, Weaver saw a fight between five or six people begin.

Weaver drove up, got out of his police car, and shouted for the men to break up the fight and drop the weapons they were using. All of the men, except a man subsequently identified as the appellant, obeyed Weaver's warning. The appellant, who was holding a wooden handled, hook-type linoleum knife, merely looked at Weaver.

Weaver ordered the appellant to drop the knife and when the appellant failed to comply with Weaver's order, Weaver pulled his service revolver out of his holster. At this point the appellant was approximately five feet away from Weaver.

Weaver reiterated his warning that the appellant should drop the knife, but the appellant started to advance toward Weaver brandishing the knife. As the appellant slowly advanced toward Weaver, Weaver continued to order the appellant to drop the knife and simultaneously yielded ground to the appellant. When the appellant got within three to four feet of Weaver, the appellant made a swing at Weaver with the knife and Weaver aimed for and shot the appellant in the leg.

1. V.T.C.A., Penal Code, Section 22.02(a)(3).

However, the appellant continued to slowly advance toward Weaver. Finally, Weaver brought his service revolver up and pointed it directly at the appellant and told him to drop the knife or "I'm going to have to kill you." At this juncture, the appellant started to back away from Weaver and Weaver started to advance toward the appellant until the appellant dropped the knife and fell down. Weaver picked up the knife, closed the blade, and handcuffed the appellant.

The appellant contends that the evidence was insufficient to sustain the verdict.

The appellant was indicted for assault under V.T.C.A., Penal Code, Section 22.-01(a)(3), which states:

"(a) A person commits an offense if he:

\* \* \* \* \* \*

(2) intentionally or knowingly threatens another with imminent bodily injury . . . .."

The assault was aggravated pursuant to V.T.C.A., Penal Code, Section 22.02(a)(3), which states:

"(a) A person commits an offense if he commits assault as defined in Section 22.01 of this code and he:

\* \* \* \* \* \*

(3) uses a deadly weapon."

Thus, the State had to prove, among other things, that the knife used by the appellant was a deadly weapon.

V.T.C.A., Penal Code, Section 1.07(a)(11), defines deadly weapon as:

"(11) 'Deadly weapon' means:

(A) a firearm or anything manifestly designed, made, or adapted for the purpose of inflicting death or serious bodily injury; or

(B) anything that in the manner of its use or intended use is capable of causing death or serious bodily injury."

■ It is well established that a knife is not a deadly weapon per se, although a knife can qualify as a deadly weapon through the manner of its use, its size and shape and its capacity to produce death or serious bodily injury. *McElroy v. State,* 528

S.W.2d 831 (Tex.Cr.App.1975); *Williams v. State,* 477 S.W.2d 24 (Tex.Cr.App.1972). Thus, the essential question is whether there is sufficient evidence to show that the appellant used the knife or intended to use the knife in such a way that it was "capable of causing death or serious bodily injury." *Danzig v. State,* 546 S.W.2d 299 (Tex.Cr.App.1977); *Harris v. State,* 562 S.W.2d 463 (Tex.Cr.App.1978).

In the present case, Weaver suffered no wounds. There was no testimony as to the *size* of the knife's blade, although Weaver testified it looked sharp. Weaver did testify that he was in fear of serious bodily injury or death while the appellant brandished the knife.

■ We find the evidence regarding "the manner of its use or intended use" insufficient to show that the linoleum knife was "capable of causing death or serious bodily injury." *Harris v. State,* supra; *Danzig v. State,* supra. We therefore find the evidence insufficient to show that the appellant used a deadly weapon. The State's evidence, at best, revealed only the commission of an assault under V.T.C.A., Penal Code, Section 22.01(a)(2).

The judgment is reversed and the cause remanded.