Affirmed and Memorandum Opinion filed December 15, 2005









Affirmed
and Memorandum Opinion filed December 15, 2005.

 

In The

 

Fourteenth Court of Appeals

____________

 

NO. 14-04-00672-CR

____________

 

BRYANT
GROVER, Appellant

 

V.

 

THE STATE
OF TEXAS, Appellee

__________________________________________________________________

 

On Appeal from the 232nd District Court

Harris County, Texas

Trial Court Cause No. 970,039

__________________________________________________________________

 

M E M O R A N D U M    O P I N I O N

A jury convicted appellant of the
offense of aggravated assault on a family member by threatening bodily injury
with a deadly weapon.  The jury found
appellant=s sentence was properly enhanced
by two prior felony convictions and sentenced him to twenty-eight years in
prison.  In his sole issue on appeal,
appellant challenges the legal sufficiency of the evidence supporting his
conviction.  We affirm.








I.  Factual and Procedural Background

Appellant resided with his wife,
Sharon Harris, and her three daughters. 
On the morning of December 3, 2004, appellant and Harris argued over a
message left on appellant=s cell
phone.  The argument subsequently evolved
into a physical confrontation.  Two of
Harris=
daughters, Courtney, age thirteen, and Brittany, age fourteen, were in the home
and heard the couple shouting.  The
children confronted both appellant and Harris and the fighting temporarily
subsided.  Afraid that appellant would
strike her again, Harris left the home and appellant followed her in another
vehicle.  About five minutes later, Harris
returned home and appellant arrived shortly thereafter.  Courtney saw appellant going up the stairs
with a lighter and an extension cord covered with a paper towel.  Courtney began to shout, AHe=s going
to burn the house down!@  Harris, Courtney, and Brittany immediately
ran outside onto the front lawn. 
Appellant then came outside and pulled Harris back into the house.  He threw her to the ground and began to choke
her.  In an effort to rescue their
mother, Courtney attempted to stab appellant with a kitchen knife, while
Brittany tried to choke him by poking him in the throat.  Appellant, who was wearing a heavy jacket,
was not hurt by Courtney=s
stabbing attempt because the blade bent on impact.  Brittany=s actions
prompted appellant to release his grasp on Harris, who quickly stood up and ran
into the kitchen.  Appellant then pushed
Brittany into a table and followed Harris into the kitchen, took several
knives, and ordered Harris, Courtney, and Brittany to go into the garage.  While holding a knife in one hand, appellant
stated that he was going to kill Harris and then kill himself.








Appellant then ordered the three
to go upstairs.  Believing that appellant
was going to kill Harris, both daughters and their mother spent time saying
goodbye to each other in Courtney=s
bedroom.  As they were talking, they
noticed that appellant, who had been pacing around the house asking for roll
tape and razor blades, was suddenly quiet. 
Harris emerged from the bedroom to find that appellant had attempted to
hang himself in the stairwell using the extension cord.  She attempted to cut him down with a knife
that was found at the top of the stairs, but was unsuccessful.  While still holding the knife, Harris and her
daughters then left the house and ran to a nearby convenience store.  On route to the store, Harris hid the knife
she had taken from the home in the ground under a tree near her neighbor=s
yard.  

When they arrived at the store,
Courtney and Brittany shouted to the store clerk that their stepfather was
trying to kill them.  Harris called 911
from the store.  Appellant suddenly
entered the store and demanded to see his wife, but left the store after a few
moments.  An officer arrived at the store
in response to the 911 call.  Harris
informed the officer that her husband had tried to kill her and had attempted
suicide.  The officer drove the three
back to Harris= home to continue his
investigation.  After it was clear that
appellant was not at home, Harris showed the officer the knife she had hidden
in the yard.  Appellant was charged with
aggravated assault.

Harris and her daughters spent
the next two nights at Harris= mother=s home
before returning to their home in Spring. 
Within the next few weeks, appellant reconciled with Harris and began to
stay at her home.  Although Harris did
not want to press charges, appellant was arrested on February 10, 2004.  A jury convicted appellant of aggravated
assault with a deadly weapon and, after finding that he had been previously
convicted of two felony offenses for possession of a controlled substance and
for assault on a public servant, sentenced him to twenty-eight years in prison.

II.  Discussion

In appellant=s sole
issue, he argues the evidence is legally insufficient to sustain his conviction
because (1) there is no testimony the knife he exhibited when threatening
Harris was a deadly weapon; and (2) there is no evidence that the knife that
was admitted at trial is the same knife he used when making the threat.








A.        Standard of Review

When conducting a legal sufficiency review, we must determine
whether, after viewing the evidence in the light most favorable to the verdict,
a rational trier of fact could have found the essential elements of the crime
beyond a reasonable doubt.  Jackson v.
Virginia, 443 U.S. 307, 319 (1979); Moff v. State, 131 S.W.3d 485,
488 (Tex. Crim. App. 2004).  During this
process, we do not re‑evaluate the credibility of witnesses or the weight
of the evidence, and we will not substitute our judgment for that of the fact‑finder.  Johnson v. State, 967 S.W.2d 410, 412
(Tex. Crim. App. 1998).  We affirm the
judgment if any rational trier of fact could have found the elements of the
offense beyond a reasonable doubt.  McDuff
v. State, 939 S.W.2d 607, 614 (Tex. Crim. App. 1997) (en banc).

B.        Analysis

1.         Is the Evidence Legally Sufficient To
Show That the Knife Was a Deadly Weapon?

 

A person commits the offense of assault if he: (1)
intentionally, knowingly, or recklessly causes bodily injury to another; (2)
intentionally or knowingly threatens another with imminent bodily injury; or
(3) intentionally or knowingly causes physical contact with another when he
knows or reasonably should believe that the other will regard the contact as
offensive or provocative.  Tex. Pen. Code Ann. ' 22.01 (Vernon 2005).  Although assault is generally a misdemeanor offense,
the felony offense of aggravated assault results when either a serious bodily
injury is inflicted, or when a deadly weapon is used or exhibited. ' 22.02.  Appellant appears to concede that
he threatened Harris with imminent bodily injury, and also does not contest
that the threat was made intentionally or knowingly.  Rather, appellant argues the evidence
presented is legally insufficient to sustain a felony conviction for the
aggravated circumstances.








Appellant first asserts there is
no evidence the knife appellant used when making the threat is a deadly
weapon.  Under the Texas Penal Code, a Adeadly
weapon@ includes
Aanything
that in the manner of its use or intended use is capable of causing death or
serious bodily injury.@  Tex.
Pen. Code Ann. '
1.07(a)(17)(B) (Vernon 2005).  When there
is no actual injury alleged to have been caused by the knife, the State must
show the knife=s capacity to cause death or
serious bodily injury by showing the manner of its use, the size of the blade,
threats made by the accused, or the physical proximity between the accused and
the victim.  Soto v. State, 864
S.W.2d 687, 691 (Tex. App.CHouston
[14th Dist.] 1993, pet. ref=d)
(citing Blain v. State 647 S.W.2d 293, 294) (Tex. Crim. App. 1983) (en
banc)).  The State may do so by offering
testimony pertaining to the size of the blade, the blade=s
appearance of sharpness, the use of any brandishing motions, or the victim=s fear of
serious bodily injury or death.  Blain,
647 S.W.2d at 294 (emphasis in original). 


Harris= daughter
Courtney testified that appellant made the threats with the knife blade Apointed
out.@  Although she stated appellant did not lunge
at any of them with the knife, she noted that he was approximately two feet
away from them at the time he made the threats. 
In response to appellant=s
threats, Courtney stated that she threw herself on top of Harris to protect her
because she believed appellant was serious about the threats.  She also testified that Harris said Agoodbye@ to
Brittany and her when they were upstairs.

Harris= other
daughter Brittany testified that appellant threatened them with the knife held Ain
different ways.@  She described the knife as Apointed,@ Aabout
this long,@ and Akind of
curved@ with a
silver blade and a black handle.  She
stated that he Awaved
them . . . back and forth@ as he
talked, but did not lunge at them. 
Brittany=s also
testified that she believed appellant=s threats
were serious, and that she also had a Agoodbye@
conversation with her mother.

Harris, who did not want to press
charges against appellant, testified as an adverse witness.  She could not remember how appellant was
holding the knife, but stated that she felt scared when appellant threatened
her while standing Amaybe
fifteen feet@ away from her.  She acknowledged that she believed appellant
would follow through with his threats and that she had shared that belief in an
emotional conversation with her daughters.








In sum, the State introduced
testimony as to the size and appearance of the blade, the motions made by
appellant, the physical proximity between appellant and Harris, and Harris= belief
in the veracity of the threat at the time it was made.  Appellant, however, argues this evidence is
insufficient to establish that the knife was capable of causing serious bodily
injury or death, because (1) appellant was fifteen feet away from Harris and
her daughters when he threatened them; (2) Aappellant
made no gestures or pointed any knife at anyone;@ and (3) Athere was
no testimony regarding the size of the knife, how sharp it was, the length of
the blade, or its shape.@

We do not find these arguments
persuasive.  First, although Harris
testified that appellant stood at a distance of fifteen feet, Courtney testified
that he stood only two feet away.  The
weight to be given contradictory testimony is within the sole province of the
jury because it turns on an evaluation of credibility and demeanor.  Gemoets v. State, 116 S.W.3d 59, 70
(Tex. App.CHouston [14th Dist.] 2001, no
pet.). Harris testified that she was appearing only because she would go to
jail if she did not testify, that she did not seek to press charges against
appellant, and that she did not want to see her husband incarcerated.  It is entirely reasonable that a jury gave
greater weight to the testimony of a teenage girl who willingly confronted the
accused in court, than to the testimony of an adverse witness with an expressed
desire to see him released.  Second, even
if appellant did not gesture or point the knife, all three witnessesCincluding
HarrisCtestified
that they believed appellant was going to follow through on his threat.  A rational jury could conclude that testimony
showing Courtney=s
initiative to throw herself on top of Harris in an effort to keep appellant
from stabbing Harris was sufficient evidence to show that appellant=s threat
to kill Harris was made with an instrument capable of causing serious bodily
injury.  Finally, appellant=s third
point is contrary to the record, because Brittany testified as to the knife=s size,
color, and shape.








In support of his argument,
appellant relies on Alvarez v. State, 566 S.W.2d 612 (Tex. Crim. App.
[Panel Op.] 1978).  In Alvarez, a
police officer attempting to break up a fight ordered all the participants to
drop their weapons.  Id. at
613.  Alvarez, who was holding a
wooden-handled hook-type linoleum knife, refused to cooperate.  Id. 
He advanced to within three or four feet from the officer, at which
time the officer pointed his service revolver at Alvarez and ordered him again
to drop the knife.  Id.  Alvarez then took a swing at the officer
with the knife, and the officer responded by shooting Alvarez in the leg.  Id. 
Alvarez continued to advance until the officer informed him that he (the
officer) was going to have to kill Alvarez, at which time, Alvarez
surrendered.  Id. at 614.  The Court held there was insufficient
evidence that the linoleum knife was capable of causing death or serious bodily
injury.  Id.  Appellant argues that his conduct was
much less egregious than that of Alvarez, and asks us to hold that the evidence
is insufficient to establish that the knife he used was not a deadly weapon.

It was not the type of weapon
that led the Court to its holding, however, but the distance between the
defendant and his putative target.  The
Eighth Court of Appeals addressed a scenario similar to the instant case in Herbert
v. State.  631 S.W.2d 585 (Tex. App.CEl Paso
1982, no pet.).  Herbert also
involved a domestic dispute in which a husband threatened to kill his wife with
a kitchen knife.  Id. at 586.  As here, the complainant suffered no physical
injuries from the knife.  Id.  The husband, however, did hold the knife to
his wife=s throat
when he threatened to kill her.  Id.  On appeal, the husband also relied on Alvarez.  Id. 
But, the court distinguished Alvarez as follows:

The critical evidentiary factor
[in Alvarez] was the distance between the actor and the complainant at
the time of the assault.   Brandishing a
. . . linoleum knife at a distance of four feet did not constitute a manner of
use posing a sufficient threat of serious bodily injury or death to justify the
verdict.  From both a practical and legal
standpoint, the effective range of the weapon is of primary consideration in
categorizing the instrument as deadly. 
This, more than any other factor, has led to the different treatment of
firearms and knives in making this determination.  The distance factor, alone, distinguishes . .
. Alvarez from the present case.

 








Id.  Viewing the facts in a light most
favorable to the verdict, appellant threatened Harris and her daughters with a
kitchen knife when standing approximately two feet away.  Because the scenario in this case is much
closer to Herbert than Alvarez, we find the holding of the former
to be more persuasive.  Accordingly, we
hold that the evidence is legally sufficient to sustain a conviction for
aggravated assault.  

2.         Is the Evidence Legally Sufficient To
Show That the Knife Admitted at Trial Was the Knife Used When the Threat Was
Made?

 

Appellant
also argues that there is insufficient evidence to show that the knife entered
into evidence at trial was the knife used by appellant when making the
threat.  At trial, the State introduced
the knife Harris hid under the tree when leaving her home.  Appellant alleges that no testimony was
introduced at trial to link that knife to him, and asks that we reverse for
that reason.

Even
assuming this argument to be correct, it is not necessary that the weapon used
be introduced into evidence at trial for the state to meet its burden of
proof.  See Morales v. State, 633
S.W.2d 866, 868B69 (Tex.
Crim. App. [Panel Op.] 1982) (affirming a conviction when the court Aknew
nothing about the size and shape of the knife,@ but
heard testimony as to the manner of its use); see also Herbert, 631
S.W.2d at 586.  As discussed above, the
testimonial evidence presented to the jury was legally sufficient to sustain
the conviction.

Because
we find that a rational jury could have found all the elements of aggravated
assault beyond a reasonable doubt, we affirm appellant=s
conviction.

 

/s/        Eva M. Guzman

Justice

 

Judgment rendered and Memorandum Opinion filed
December 15, 2005.

Panel consists of Justice Fowler, Edelman, and
Guzman.

Do Not Publish C Tex. R. App. P. 47.2(b).